J-S12028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                           :  PENNSYLVANIA
                                         :

         v.  :

JOEY MORALES  :

            Appellant  :  No. 1881 EDA 2018

Appeal from the Order Entered June 11, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  MC-51-CR-0030637-2017

BEFORE:   SHOGAN, J., McCAFFERY, J., and COLINS, J.[1*]

MEMORANDUM BY McCAFFERY, J.:  **FILED APRIL 28, 2020**

Joey Morales (Appellant) appeals from the order entered in the Court of

Common Pleas of Philadelphia County denying his writ of *certiorari* in this

driving under influence of alcohol or controlled substance[2] (DUI) matter.

Appellant argues that his blood draw violates the Fourth Amendment because

the warnings given at the time he gave consent are unduly coercive and thus

vitiate any consent for a blood draw obtained thereby.  We affirm.

The Court of Common Pleas summarized the facts as follows:

>     On October 12, 2017, Appellant was stopped by Philadelphia
> Police Sgt. Kevin Livewell at 9:45 a.m., near the 1000 block of
> [S]outh Broad Street.  Sgt. Livewell is a 17-year veteran of the
> Philadelphia Police Department and has been engaged in
> thousands of DUI stops and arrests.  Sgt. Livewell testified that
> on two occasions [on the morning of October 12th], he observed

---

[1*] Retired Senior Judge assigned to the Superior Court.

[2] 75 Pa.C.S. § 3802(d)(1).

Appellant fail to proceed in the direction of the green traffic signal until he honked his horn. . . . After the second time, Sgt. Livewell turned on his [flashing] lights, where[upon] Appellant failed to stop or pull over for two additional blocks. Sgt. Livewell stated he had to pull next to Appellant to get his attention so that he could get Appellant to pull over and even that took several seconds. Once Appellant pulled over, Appellant turned the vehicle off and removed the key from the ignition. When Sgt. Livewell approached the vehicle, Appellant was trying to remove the key from the ignition, but it was in Appellant's left hand.

Sgt. Livewell requested Appellant's driver's license and registration several times, but the documents were not produced until later. When Appellant failed to produce the documents, Sgt. Livewell asked Appellant to step out of the car. Appellant had to use the car for balance when he exited. Then, Sgt. Livewell asked for Appellant's license again. Appellant said it was in his back pocket, but proceeded to check his front pockets. Sgt. Livewell asked whether Appellant suffered from any medical conditions, and Appellant did not respond. Sgt. Livewell testified that he asked Appellant other questions to which the responses were either incoherent or unclear unless repeated many times. One of Appellant's unclear statements was that he was headed to work at the Navy Yard[;] however in another response Appellant told Sgt. Livewell that i[t] was his day off. Finally, Sgt. Livewell placed Appellant under arrest for suspicion of DUI.

Philadelphia police officer Matthew Domenic was the assigned chemical testing officer for the city on October 12, 2017. Officer Domenic testified he read the DL-26[B] form which contained the warnings verbatim, at which time, he observed that Appellant appeared drowsy and also had red, glassy eyes. Then, Officer Domenic asked Appellant to submit to a blood alcohol test. Appellant agreed to submit to the blood alcohol test and signed the DL-26[B] form. Appellant's blood was then drawn in Officer Domenic's presence and was put on a Philadelphia property receipt. Appellant testified [at the suppression hearing] he was going to refuse the blood alcohol test[;] however he consented to the blood alcohol test because he did not want to have his driver's license suspended.

Common Pleas Ct. Op., 9/26/19, at 2-3 (references to notes of testimony omitted).

The form warning read to Appellant specified, "If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months." Form DL-26B, 6/16. The form reflects Pennsylvania's DUI "implied consent" statute, 75 Pa.C.S. § 1547. The parties stipulated at trial that the blood analysis from the contested draw showed that Appellant was a recent user of fentanyl and morphine, and was unfit to drive due to their combined effect at the time of arrest. N.T., 3/5/18, at 27.

Appellant was convicted in the Philadelphia Municipal Court of DUI on March 8, 2018, under Subsection 3802(d)(1), which refers to controlled substances.[3] On April 5, 2018, he filed a petition for a writ of *certiorari* to the Court of Common Pleas, which was denied on June 11th.[4] On June 28, he filed a notice of appeal. On July 23, 2018, Appellant filed a timely court-ordered statement of errors complained of on appeal. The Court of Common Pleas has issued an opinion.

Appellant raises the following issues for our review:

> 1. Did not the Commonwealth fail to sustain its Fourth Amendment burden to show that the purported consent to a warrantless blood draw was a free and unconstrained choice by [Appellant] where the agreement to take the test was obtained after a coercive threat of a lengthy driver's license suspension?

---

[3] Appellant was initially convicted of DUI on March 5, 2018, but on March 8th, his conviction was vacated and he was convicted under 75 Pa.C.S. § 3802(d)(1); this procedure was to clarify the precise subsection of the statute under which he was convicted.

[4] ***See*** 42 Pa.C.S. § 934 (Common Pleas judges have the power to issue writs of *certiorari* to the minor judiciary).

2.      Does not the Implied Consent [Statute], 75 Pa.C.S. § 1547, violate the Fourth Amendment if blood results are admitted in a criminal prosecution based on implied consent even though there was no actual consent because of a coercive threat of a license [suspension] for at least a year?

3.      Based on the totality of the circumstances, was there insufficient evidence to sustain a finding of actual voluntary consent, and is not the Implied Consent Statute violative of the Fourth Amendment if applied to admit the blood test results in this criminal prosecution?

Appellant's Brief at 3 (capitalization omitted).

Because Appellant's "totality of the circumstances" argument was not included in his court-ordered Rule 1925(b) statement of errors, it is waived. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Further, Appellant did not specify before the suppression court that he was making a frontal challenge to Section 1547. **See Commonwealth v. Burkholder**, 595 A.2d 59, 62 (Pa. 1991) (issues not raised before the trial court are waived). What remains is his first question presented: did the Commonwealth establish the consent exception to the warrant requirement?

Appellant argues that suppression should have been granted because his consent for the blood draw was not voluntary and thus violated the Fourth Amendment. He asserts that under **Schneckloth v. Bustamante**, 412 U.S. 218 (1973), and **Commonwealth v. Myers**, 164 A.3d 1162 (Pa. 2017), the proper analysis is whether the Commonwealth established actual consent. Because Appellant was warned that his driving privileges would be revoked

- 4 -

for at least a year if he did not consent, he claims that his consent was not a voluntary, free, and unconstrained choice and therefore the blood draw results must be suppressed. Appellant also avers that this Court has erred in holding that there is no impermissible coercion in this scenario because loss of driving privileges is a civil penalty rather than a criminal one; Appellant maintains the United States Supreme Court has directed that such a civil/criminal distinction is irrelevant when determining whether consent is voluntary, citing **Boyd v. United States**, 116 U.S. 616 (1886), and its progeny.

The Commonwealth argues that Appellant's argument has been repeatedly rejected by this Court, and that it is inconsistent with decisions of both the United States and Pennsylvania Supreme Courts, which distinguish criminal penalties for refusal from civil and evidentiary consequences for refusal.

The Court of Common Pleas reviewed Appellant's conviction and denied his petition for writ of *certiorari*, finding that civil penalties for refusal of a blood draw are permissible, and that Pennsylvania law is clear that suspension of driving privileges is a civil penalty. Common Pleas Ct. Op. at 5-8.

We will not disturb the lower court's issuance of a writ of *certiorari* unless we find an abuse of discretion. **Commonwealth v. Elisco**, 666 A.2d 739, 740 (Pa. Super. 1995).

Section 1547 of the Pennsylvania Vehicle Code provides in pertinent part:

**(a) General rule**. — Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth **shall be deemed to have given consent** to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of . . . 3802 (relating to driving under influence of alcohol or controlled substance) . . . .

**(b) Civil penalties for refusal.**

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

(ii) For a period of 18 months if any of the following apply:

(A) The person's operating privileges have previously been suspended under this subsection.

(B) The person has, prior to the refusal under this paragraph, been sentenced for [certain related prior offenses.]

75 Pa.C.S. § 1547(a), (b)(1) (emphasis added).

The United States Supreme Court held in ***Birchfield v. North Dakota***,

136 S. Ct. 2160 (2016), that the search incident to arrest doctrine[5] permits

---

[5] ***See Commonwealth v. Simonson***, 148 A.3d 792, 798-800 (Pa. Super. 2016) (reviewing history of search incident to arrest doctrine; "[T]he search incident to arrest exception permits a search of the arrestee's person as a matter of course[.]").

law enforcement to conduct warrantless breath tests on suspected DUI drivers, but not warrantless blood tests. *Id.* at 2185. The Court further held that motorists cannot be deemed to have consented to submit to a blood test where refusal constitutes a **criminal** offense. *Id.* at 2186.

In *Myers*, 164 A.3d 1162, our Supreme Court affirmed suppression of blood test results from an unconscious person, holding that the blood draw violated Pennsylvania's implied consent law, as Section 1547(b)(1) provides an absolute right to refuse chemical testing. *Id.* at 1164. In *Commonwealth v. Bell*, 211 A.3d 761 (Pa. 2019), *cert. denied* 140 S. Ct. 934 (U.S. Jan. 21, 2020), that court applied *Myers* and *Birchfield*, clarifying that "the pertinent question in determining the constitutionality of a statute demanding this particular choice is whether the consequence for refusing a warrantless blood test undermines the inference that the motorist implicitly consented to it, and suggests instead that the 'search' was coerced." *Bell*, 211 A.3d at 773. The *Bell* Court approved the implied-consent statute's provision permitting evidence of defendant's refusal to submit a sample of blood for testing without a search warrant as proof of consciousness of guilt, holding that the evidence's admission at trial does not violate the Fourth Amendment. *Id.* at 776.

In *Commonwealth v. Geary*, 209 A.3d 439 (Pa. Super. 2019), this Court reversed suppression in a DUI case where the defendant claimed his consent to blood draw was not voluntary because of the adverse inference in court of a refusal. *Geary*, 209 A.3d at 444. Because the consequences of refusal are "exclusively either civil or evidentiary in nature" they do not violate

***Birchfield***, which explicitly directed that prior opinions approving of implied-consent laws imposing civil penalties and evidentiary consequences on motorists who refuse to reply should not be cast into doubt by ***Birchfield***. ***Id.*** at 442, *citing* ***Birchfield***, 136 S. Ct. At 2185; ***Commonwealth v. Robertson***, 186 A.3d 440, 444 (Pa. Super. 2018), *appeal denied*, 195 A.3d 852 (Pa. 2018); and ***Commonwealth v. Johnson***, 188 A.3d 486, 490 (Pa. Super. 2018), *appeal denied*, 195 A.3d 852 (Pa. 2018).[6]

In ***Robertson***, this Court reviewed developments in the law since ***Birchfield***, including the revision of Form DL-26B, and reversed suppression where the totality of the circumstances indicated that the defendant's consent to a blood draw, given after a warning that refusal would result in license suspension, was voluntary.[7] ***Robertson***, 186 A.3d at 444, 448. Though the appellant in ***Robertson*** did not focus her appeal on the alleged coercive effect of license suspension, she did contest the voluntariness of her consent to a blood draw. ***Id.*** at 448 (analyzing voluntariness of consent to blood draw).

---

[6] In ***Johnson***, this Court reversed suppression of a warrantless blood draw where the appellee sincerely but mistakenly believed she would be subject to criminal penalties if she refused. ***Johnson***, 188 A.3d at 491.

[7] "Within one week of [***Birchfield***], PennDOT revised the DL–26 form to remove the warnings mandated by 75 Pa.C.S. § 3804 that theretofore informed individuals suspected of DUI that they would face enhanced criminal penalties if they refused to submit to a blood test." ***Robertson***, 186 A.3d at 444. The defendant in ***Robertson*** was warned that her driving privileges would be suspended for 12 to 18 months if she refused blood testing. ***Id.*** at 443, n.2.

Ultimately, Appellant's argument hinges upon his assertion that "prior panels of this Court that have upheld blood draws in response to the standard license suspension warning as voluntarily consensual do not withstand scrutiny" because this Court is mistaken that "there is no coercion simply because the threatened penalties are civil." **See** Appellant's Brief at 19. Nonetheless, these cases are binding precedent. **See Commonwealth v. Ingram**, 926 A.2d 470, 476 (Pa. Super. 2007) (Superior Court opinions are binding precedent and this Court must follow them unless and until they are overruled by an *en banc* Superior Court panel or by a higher court).[8]

Because Appellant has not cited any binding authority establishing that the results of his blood draw should be suppressed, and because the binding authority of this Court establishes the propriety of the warnings issued to Appellant prior to his consent, the Court of Common Pleas properly denied his petition for a writ of *certiorari*.

Order affirmed.

---

[8] In his reply brief, Appellant urges this Court to "consider the case *en banc* because of the significant issue that it raises." Appellant's Reply Brief at 1. Appellant is free to seek *en banc* review through the appropriate application.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>04/28/2020</u>